LORD MAISON PHIBONACCII
18612 WILLARD ST
RESEDA CALIFORNIA, 91335
EMAIL: LORDESQ@ICLOUD.COM
PHONE: (818) 438-9998
PLAINTIFF, IN PRO PER
LORD MAISON PHIBONACCII



**BD&J**

*Boring Deposits & Judgments*
Serial Number 99559829
SOS Entity No. 5820678

LORD MAISON PHIBONACCII,
Plaintiff,
v.
Defendants,
DIRECTOR, CALIFORNIA
DEPARTMENT OF MOTOR
VEHICLES, in official capacity only;
ELIZABETH G. HUMPHREYS, in her
individual capacity; JENNIFER
BERRY, in her individual capacity;
GAIL MAIORANA, in her individual
capacity; JOSEPH CHAPMAN, in his
individual capacity; MICHAEL
CRAIG BREMER, in his individual
capacity; SERGEANT JOHN J.
BARTOLONE #319, in his individual
capacity; DOES 1–10, inclusive

**Case No.** 2-25-cv-09270-SB-E-2
**PLAINTIFF'S OPPOSITION TO DEFENDANT DIRECTOR'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

**Time:** *9:30 a.m.*
**Courtroom:** *750*
**Judge:** *Hon. C. F. Eick*

## INTRODUCTION

Defendant's motion tries to reduce this case to a pleading problem. It is not. This is a procedural due process case brought by Plaintiff in his own individual capacity based on DMV recordkeeping, title, registration, licensing, and enforcement conduct that allegedly caused real downstream harm to Plaintiff personally. Plaintiff's FAC expressly states that he appears "only Plaintiff in this action, appearing pro se and in his individual capacity," and alleges that DMV's record-driven actions deprived him of protected property and liberty interests without constitutionally adequate notice and opportunity to be heard.

1. Stated plainly: Plaintiff needs his car back. Plaintiff alleges DMV record errors, title and registration errors, notice failures, and defective procedures helped create the chain of harm now burdening his ownership, possession, liberty, and legal status as to the BMW i8. Plaintiff further alleges that the record must be corrected, annotated, and neutralized to stop the ongoing downstream harm. The FAC expressly seeks prospective relief to correct and/or annotate DMV records, including the February 26, 2020 "new owner reported" event and related registration history.

2. Defendant's own memorandum confirms that Defendant understands the substance of the FAC. Defendant describes the FAC as alleging DMV mistakes in tracking registration and ownership, failures of notice, and improper revocation-related conduct. A defendant that can summarize the factual nucleus, separate the parties, identify the causes of action, argue immunity, challenge capacities, and attack

*Boring Deposits & Judgements*

jurisdiction cannot seriously claim that it cannot prepare a response. This motion should be denied. At minimum, if the Court believes greater precision is needed, the proper remedy is leave to amend, not dismissal. Fed. R. Civ. P. 15(a)(2).

**LEGAL STANDARD**

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and each allegation must be "simple, concise, and direct." Rule 12(e) is limited to a pleading "so vague or ambiguous that the party cannot reasonably prepare a response," and Rule 15 says leave to amend should be freely given when justice so requires. 28 U.S.C. § 1654 also expressly permits parties to conduct their own cases personally.

3.

Plaintiff proceeds pro se, which matters. The Supreme Court held in *Haines v. Kerner* that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus* reaffirmed that principle and reversed dismissal of a pro se complaint, emphasizing that specific facts are not required so long as the pleading gives fair notice of the claim and the grounds on which it rests. The Ninth Circuit likewise holds that pro se pleadings must be construed liberally even after *Iqbal*. Plaintiff is not required to plead like the Attorney General in order to survive the Attorney General's motion.

**ARGUMENT**

**I. THE FAC PLAUSIBLY ALLEGES A REAL PROCEDURAL DUE PROCESS CLAIM**

4.

Procedural due process is not decorative. It is a constitutional restraint on government action. Notice must be reasonably calculated to apprise interested persons of the action and afford them an opportunity to respond. What process is due depends on the private interest affected, the risk of erroneous deprivation under the procedures used, the probable value of additional safeguards, and the government's interest. That is exactly the lane of the FAC. Plaintiff alleges that DMV collapsed multiple transactions into a false one-sale narrative, failed to disclose the triggering complaint, maintained adverse title and registration entries without lawful authorization, and allowed defective records to be exported into bond, insurance, collection, and criminal systems.   Plaintiff alleges those records drove collateral consequences including bond and collection reliance, insurance-claims positioning, criminal exposure, reputational harm, arrest, bail, and ongoing impairment of his ability to recover and use his vehicle. Defendant's own memorandum confirms it understands the theory. Defendant summarizes the FAC as alleging erroneous DMV registration and licensure actions, failures to notify Plaintiff, and improper revocation-related conduct.   That is fair notice. Rule 8 does not require Plaintiff to prove the case at the pleading stage; it requires fair notice of the claim. *Johnson v. City of Shelby* and *Hearns v. San Bernardino Police Department* both support that approach. This case is not abstract. Plaintiff needs his car back. Plaintiff alleges DMV is responsible for material record and process errors, and Plaintiff alleges the record must be corrected.

**II.**

**PLAINTIFF APPEARS IN HIS INDIVIDUAL CAPACITY AND ALLEGES PERSONAL INJURY**

5.

Defendant tries to collapse the FAC into a grievance belonging only to 3RAW, Inc. But the FAC expressly states that Plaintiff appears "in his individual capacity."   It further alleges Plaintiff's personal property interests in the BMW i8 and in the accuracy and integrity of state-maintained title and registration records, plus liberty interests including freedom from arrest, detention, bond obligations, and stigma grounded in defective DMV-maintained records.

2

Plaintiff is not here as a volunteer for 3RAW. Plaintiff is here because the downstream effects of DMV's allegedly defective process hit Plaintiff personally. At the pleading stage, reasonable inferences must be drawn in Plaintiff's favor, not Defendant's.

**III.**
**DEFENDANT'S RELIANCE ON 3RAW IS SELECTIVE AND INCOMPLETE**

6.
Defendant repeatedly invokes 3RAW, Inc. as though it were a stable and separate corporate box that defeats Plaintiff's personal injury theory. But Defendant's presentation is selective. Defendant attaches older Secretary of State materials concerning 3RAW, including formation and a 2021 Statement of Information,   while omitting the later record posture showing that 3RAW is no longer an ongoing operational entity in the manner Defendant implies. The fuller record shows 3RAW's current status is **terminated**, with an **inactive date of March 21, 2022**, **agent standing marked "Not Good,"** and current status reflecting **"No Agent / Agent Resigned or Invalid."** The record also reflects a filed **Resignation of Agent for Service of Process** dated **April 8, 2022**, signed by Plaintiff as the resigning agent. Those later records matter because they complete the chronology Defendant left out. Defendant cannot rely on older 3RAW paperwork when it is useful, then ignore the later resignation-and-termination posture that supports Plaintiff's theory that the downstream effects of the challenged DMV conduct did not remain confined to an abstract corporation. In other words, Defendant cites 3RAW's old paperwork, but not 3RAW's ending.

**IV. DEFENDANT'S OWN MOTION SHOWS THE FAC IS NOT TOO VAGUE TO ANSWER** Defendant alternatively seeks a more definite statement, claiming the FAC is too indefinite regarding capacities.   But Defendant's own motion defeats that request. Defendant has already identified the causes of action, distinguished between the Director and the Individual Defendants, summarized the factual nucleus, raised personal-participation objections, raised official-capacity objections, asserted immunity defenses, and advanced a jurisdictional argument.    A party that can do all of that can reasonably prepare a response. Rule 12(e) is not a mechanism to demand professional editorial refinement from a self-represented litigant whose allegations are already intelligible enough to permit a targeted response. *Hearns* supports that point directly.

**V.**
**THE DIRECTOR / OFFICIAL-CAPACITY THEORY IS SUFFICIENTLY PLED**
Defendant argues that the Director is named only through general supervisory responsibilities and that no policy or custom is pleaded.   But the FAC alleges the Director is responsible for DMV record-keeping systems, occupational-licensing policies, and procedures governing disputed title and registration entries.   Those are the exact systems and procedures Plaintiff alleges produced the due process injury.

The FAC also seeks prospective relief requiring preservation, production, correction, annotation, and neutralization of defective records, plus implementation of reasonable procedures going forward.   That is a classic prospective official-capacity theory under *Ex parte Young*, which permits suits against state officials to halt ongoing violations of federal law.

**VI. DEFENDANT'S MOTION AVOIDS THE CORE DUE PROCESS PROBLEM**

Defendant's motion seeks dismissal, but it does not truly engage the full constitutional problem pleaded in the FAC. Instead of squarely confronting the continuing due process defects alleged there, the memorandum leans heavily on threshold escape hatches: immunity, capacity characterization, and efforts to recast the pleading as merely corporate or indefinite.

3

The FAC alleges an ongoing record-driven due process problem: a missing complaint, a mischaracterized ROS, adverse title and registration entries, lack of meaningful notice, lack of a fair opportunity to be heard, and continuing downstream reliance on defective DMV-created records.    Yet rather than show that DMV's procedures were constitutionally adequate, Defendant mainly argues that certain actors should be insulated from accountability and that the case should end before the challenged procedures and records are fully examined. A defendant confident in the constitutional adequacy of its process would defend the process itself, not just the immunity of the people who carried it out.

## VII. IMMUNITY DOES NOT PUT DEFENDANTS ABOVE DUE PROCESS SCRUTINY

Defendant's motion leans heavily on immunity.   But immunity does not mean the government's process is automatically constitutional, and it does not place state actors above judicial scrutiny for ongoing due process violations. *Ex parte Young* permits prospective relief against state officials to halt ongoing federal violations. That is exactly why Plaintiff's FAC seeks prospective declaratory and injunctive relief to correct and annotate defective DMV records and halt continued reliance on them.

Even where some officials may assert absolute immunity from damages for certain functions, that does not make the underlying conduct constitutional. Immunity is a defense to certain remedies for certain official functions; it is not a declaration that due process happened. *Butz v. Economou* discusses immunity as to particular official functions, and *Pulliam v. Allen* recognized that judicial immunity did not categorically bar prospective injunctive and declaratory relief under § 1983.

Defendants are free to argue immunity. They are not free to treat immunity as a substitute for constitutional process.

## VIII. EVEN IF SOME IMMUNITY APPLIES, IT DOES NOT JUSTIFY DISMISSAL OF THE ENTIRE ACTION

Even assuming some immunity doctrines may apply to some defendants as to some functions, that does not justify dismissal of the entire FAC. The FAC alleges a broader record-driven due process scheme, including missing complaint issues, mischaracterized ROS treatment, record export into downstream systems, and title and registration changes allegedly made without lawful authorization and meaningful process.

So even if some defendants may ultimately be immune for particular acts, that would not erase Plaintiff's official-capacity due process challenge, would not defeat the prospective claims aimed at correcting ongoing record-based harm, and would not justify threshold dismissal of every claim.

## IX. DEFENDANT'S DECLARATION AND SUPPORT PAPERS SHOW SLOPPINESS, NOT CLARITY

Defendant's supporting papers themselves reflect inconsistencies that undercut the sweeping confidence of the motion.

The Notice of Motion sets the hearing for **May 15, 2026**.   But Bargmann's declaration states **May 14, 2026** for the same motion.   That is off by one day.

The declaration also contains internal slippage, including a signature block referring to "Attorney for Defendant State of California by and through of Governor's Office," even though the motion is framed as being for the DMV Director.

And the certificate of service says service would be accomplished by CM/ECF and was executed by "C. Hernandez," not Bargmann.   None of this, standing alone, decides the motion. But it reinforces a broader point: Defendant asks the Court to dismiss on a theory of supposed clarity and legal certainty while its own supporting materials are imprecise.

## X. THE REQUEST FOR JUDICIAL NOTICE IS INCOMPLETE

Defendant's request for judicial notice is incomplete in a way that favors Defendant's narrative. It attaches older Secretary of State documents for 3RAW, Inc.,   but omits the later status materials showing termination and agent resignation. If Defendant

4

wishes to place 3RAW's corporate existence into issue, the Court should view the record in complete chronology, not selectively.

Selective corporate history is not a substitute for constitutional process.

## XI. THIS CASE SHOULD MOVE FORWARD, NOT BACKWARD

The procedural history matters. Default was entered in December 2025, and Plaintiff did not insist on freezing the case there. Instead, Plaintiff permitted the case to continue after the default was set aside as a courtesy and in the interest of reaching the merits. From there, the better course is forward movement, not renewed threshold avoidance.

Federal procedure favors resolving disputes on a developed record where possible, and Rule 15's liberal amendment policy reflects the broader principle that cases should not be ended prematurely for curable pleading issues.   In that posture, the Court should be wary of allowing the litigation to remain trapped at the threshold through serial attempts to avoid the merits.

Default was once entered, Plaintiff allowed the case to continue as a courtesy, and the appropriate next step now is forward movement into the merits—not renewed threshold avoidance.

## XII. THE MOTION FUNCTIONALLY ADVOCATES FOR OTHER DEFENDANTS AND THE COURT SHOULD REQUIRE CLARITY AS TO APPEARANCE

Although styled as a motion by the Director, the memorandum substantively argues on behalf of the Individual Defendants too. It raises defenses for Humphreys, Berry, Maiorana, Chapman, and Bartolone, including pleading objections and immunity theories directed specifically to those individuals.

The Court should require clarity as to which counsel appears for which defendants. If the Attorney General's office is appearing for the Individual Defendants as well, then CM/ECF service on that office should be treated accordingly. If not, then the motion underscores the need for the defense to stop blurring the line while seeking relief for multiple parties.

## XIII. FEDERAL QUESTION JURISDICTION REMAINS

Defendant's jurisdiction argument is derivative. Defendant says that if the constitutional claims fall, only a state-law declaratory dispute remains.   But because the FAC plausibly alleges federal due process violations under § 1983 and seeks prospective relief from ongoing constitutional injury, federal-question jurisdiction remains under 28 U.S.C. §§ 1331 and 1343. The Declaratory Judgment Act does not independently create jurisdiction, but once a plausible federal constitutional claim is pleaded, jurisdiction exists to adjudicate declaratory relief tied to that federal controversy. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

## XIV. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

Even if the Court concludes that any allegation should be sharpened, separated, or tied more expressly to a particular defendant, capacity, or procedural event, dismissal without leave to amend would be improper. Rule 15 embodies a strong policy favoring amendment.   The Ninth Circuit applies that principle with particular force where a self-represented litigant may cure defects through clarification rather than suffer dismissal at the threshold. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

## CONCLUSION

This case is not about perfect drafting. It is about whether DMV used constitutionally adequate process before allowing adverse title, registration, licensing, and ownership consequences to attach to Plaintiff. Plaintiff is here in his individual capacity. Plaintiff alleges personal downstream injury. Plaintiff needs his car back. Plaintiff alleges DMV's record errors and notice failures helped create this problem. The record needs to be adjusted. Defendant's response is telling. The motion does not persuasively show that Plaintiff received constitutionally adequate notice, a meaningful opportunity to be heard, or a reliable record-based process before adverse DMV consequences attached. Instead, Defendant turns primarily to immunity, narrowing, and dismissal.

5

That is not a reason to terminate the case at the pleading stage. It is a reason to let the case proceed so the due process issues can be tested on an actual record. For the foregoing reasons, Defendant's motion should be denied. In the alternative, Plaintiff respectfully requests leave to amend.

Dated:  April 29, 2026



Lord Maison Phibonaccii,
Plaintiff, In Propria Persona.

6

